UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Newport News Division

**ELLIS E. HALES, JR.,**
       **Plaintiff,**

v.                                            **Civil Action No. 4:06cv3203**

**GARLOCK SEALING TECHNOLOGIES
LLC, et al.,**
       **Defendants.**

## ORDER AND OPINION

Currently before the court are plaintiff's, Ellis Hales, Jr., Motion for Remand, seeking to remand this case to the Circuit Court for the City of Newport News, Virginia, and defendant's, Warren Pumps, Motion to Stay Proceedings Pending Transfer to the Judicial Panel on Multi-district Litigation. The court has reviewed the record and finds that a hearing is not necessary for the resolution of the issues presented. For the reasons set out herein, the court **DENIES** defendant's motion to stay and **GRANTS** plaintiff's motion to remand.

### I. Factual and Procedural Background

Plaintiff's Complaint, filed in March of 2006, in the Circuit Court for the City of Newport News, Virginia, states that plaintiff was employed at American Tobacco's Hanmer Plant in Hopewell, Virginia, from 1966 to 1982 as "a utility worker, machine helper, relief machine operator, supply room worker and millwright in the maintenance department" (Compl. 3). In July of 2005, plaintiff was diagnosed with terminal mesothelioma and plaintiff alleges that the eight named defendants, including Waco, Inc., are responsible as they were "engaged, directly or indirectly, in the manufacturing, producing, selling, merchandising, supplying, distributing, and/or otherwise placing in the stream of commerce, asbestos containing products" (Compl. 3).

Specifically, plaintiff claims that Waco "supplied, either directly or indirectly, to the Plaintiff and/or Plaintiff's employer, various asbestos-containing products manufactured by different companies, including pipecovering, sections, block, cement, and textiles" (Compl. 4).

On May 26, 2006, defendant Warren Pumps filed a Notice of Removal to the United States District Court for the Eastern District of Virginia pursuant to this court's diversity jurisdiction. Although it is undisputed that plaintiff is a citizen of Virginia and Waco, Inc. is a Virginia Corporation with its principle place of business in Newport News, Virginia, Warren Pumps contends that Waco's presence in the lawsuit does not defeat diversity jurisdiction because plaintiff fraudulently joined Waco. Subsequent to removal of this matter, plaintiff filed a motion to remand, defendant filed a reply in opposition to remand, and plaintiff filed a rebuttal. Additionally, on July 17, 2006, Warren Pumps filed a motion to stay proceedings in this court pending transfer to the Judicial Panel on Multi-district Litigation.

## II. Standard of Review

The rules governing removal to federal court premised on diversity jurisdiction require both that all defendants are diverse, and that none of the defendants are a citizen of the state where the action is brought. See 28 U.S.C. § 1441. However, the doctrine of fraudulent joinder permits a federal judge to disregard non-diverse parties, thereby creating subject matter jurisdiction, even in the absence of complete diversity. Mayes v. Rapoport, 198 F.3d 457, 461 (4th Cir. 1999). In order to successfully apply such doctrine a defendant must overcome an onerous standard, requiring that defendant prove either: "That there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or [t]hat there has been outright fraud in the plaintiff's pleading of jurisdictional facts." Marshall

v. Manville Sales Corp., 6 F.3d 229, 232 (4th Cir. 1993) (quoting B., Inc. v. Miller Brewing Co., 663 F.2d 545, 549 (5th Cir. 1981)).  Defendant's "heavy burden" is further illustrated by the fact that it must show that "plaintiff cannot establish a claim even after resolving all issues of law and fact in the plaintiff's favor."  Hartley v. CSX Transp., Inc., 187 F.3d 422, 424 (4th Cir. 1999). Plaintiff, however, is not required to establish that claims against the non-diverse defendant will "ultimately succeed," but rather, "only a possibility of a right to relief need be asserted." Marshall, 6 F.3d at 233.  In weighing such possibility, the court is "not bound by the allegations of the pleadings, but may instead consider the entire record, and determine the basis of joinder by any means available."  Mayes v. Rapoport, 198 F.3d 457, 464 (4th Cir. 1999) (citations omitted).

Although the "no possibility of relief" standard set forth above appears straightforward, this court has recently recognized some inconsistencies in the way that such standard has been applied; as a result, this court has held that the "no possibility" standard must not be mechanically applied, but rather, should turn on whether there is a "reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." Sanders v. Medtronic, Inc., No. 4:06cv57, 2006 WL 1788975,  at *3 (E.D. Va. Jun. 26, 2006) (quoting Linnin v. Michielsens, 372 F. Supp. 2d 811, 818 (E.D. Va. 2005)).  Although construing the "no possibility" standard in such manner may be slightly broader than a strict reading of the text suggests, the court is mindful of the Fourth Circuit's instruction that courts should "resolve all doubts about the propriety of removal in favor of retained state court jurisdiction."  Hartley, 187 F.3d at 425 (quoting Marshall, 6 F.3d at 232).

### III. Discussion

Warren Pumps' notice of removal recognizes that because both plaintiff and Waco are

Virginia citizens for jurisdictional purposes and because removal was premised on diversity of citizenship, jurisdiction only exits in this court if defendant can establish that Waco was fraudulently joined.  To meet such burden, defendant must establish that there is no "reasonable basis" for plaintiff to recover against Waco.  In applying such standard, the court recognizes that depriving a defendant of its right to a federal forum is substantial as the court's decision to remand "is not reviewable on appeal or otherwise."  28 U.S.C. § 1447(d).

Plaintiff's Complaint sets forth broad allegations against all defendants and more specific allegations against each individual defendant.  In the paragraph devoted solely to allegations against Waco, plaintiff alleges that Waco "supplied, either directly or indirectly, to the Plaintiff and/or Plaintiff's employer, various asbestos-containing products manufactured by different companies, including pipecovering, sections, block, cement, and textiles" (Compl. 4).  Considering the entire record and resolving all factual disputes in favor of plaintiff, it is deemed established, for the purposes of this motion, that Waco not only supplied asbestos pipe insulation to the American Tobacco plant where plaintiff worked for more than fifteen years, but that Waco contractors installed such insulation during plant shutdowns (Pl. May 2, 2006 Depo. 211).[1]  Such semi-annual shutdowns generally lasted two weeks and plaintiff specifically recalls seeing Waco's name on contractors' trucks during plant shutdowns (Pl. Depo. 47, 211).  American Tobacco workers were generally on leave during shutdowns; however, as a member of the maintenance department, plaintiff worked every shutdown from 1977 through 1982 (Pl. Depo. 48).  Although plaintiff states in his deposition that the outside contractors draped off the

---

[1]  Although discovery is far from completed, plaintiff was deposed in order to preserve his testimony due to his terminal mesothelioma.  Plaintiff was first deposed by the defense on May 2, 2006, and a *de bene esse* deposition was conducted on May 5, 2006.  Unless otherwise noted, the court references the discovery deposition conducted on May 2, 2006.

asbestos work areas with poly curtains, such precautionary measures only occurred in "the later years" of plaintiff's employment, referring to the "early eighties" (Pl. Depo. 113-14). Plaintiff explains that the curtains used in the early eighties were used because it was "real dusty" in the area where contractors were working; however, the record does not establish that the "real dusty" areas were properly decontaminated and the air tested prior to defendant and other plant workers being permitted to reenter (Pl. Depo. 113). Additionally, plaintiff's memoranda and supporting documents suggest that Waco, an installer <u>and</u> distributor of asbestos products, may have also supplied the plant with other asbestos products that plaintiff personally handled.[2] Although the record before the court fails to prove such allegation, the current record is based on limited discovery and just as the record does not establish such claim, it does not foreclose it either.[3]

---

[2] Defendant argues that plaintiff's Complaint does not adequately assert such claim and that such argument was only advanced by plaintiff's counsel in memoranda to the court. Although, if correct, defendant's position may ultimately bar recovery on such theory, at this stage in the proceedings, the court must resolve all factual <u>and legal</u> issues in plaintiff's favor. Therefore, as the broad accusation in the Complaint alleges that all named defendants were "engaged, directly or indirectly in . . . supplying, distributing, and/or otherwise placing in the stream of commerce, asbestos containing products" (Compl. 3), plaintiff at least arguably has the potential to succeed on such claim against Waco; therefore, at this stage the court will assume that it is properly alleged in the Complaint.

[3] Although plaintiff has not yet proven a direct link between Waco and the asbestos products that plaintiff directly handled at American Tobacco's plant, plaintiff has supplied Waco purchase orders from 1975 indicating that, during the 1970s, Waco purchased "Compressed Asbestos Packing" and "Asbestos Cloth," from asbestos manufacturers for redistribution to Waco's customers (Mo. to Remand Ex. M); as discussed above, it is not in dispute that American Tobacco was one of Waco's customers. Furthermore, plaintiff has attached the 1977 deposition of David W. Helfrich, a Waco Vice President, which also establishes that Waco distributed asbestos products, including asbestos cloth, to its customers during the 1970s (Mo. to Remand Ex. M). Plaintiff states under oath the he directly handled asbestos cloth at American Tobacco, but he is uncertain as to the manufacturer of such cloth (Pl. *de bene esse* Depo. 106-07). Although connecting Waco's distribution of asbestos cloth to American Tobacco is somewhat speculative at this point, defendant has not provided a deposition or affidavit establishing that Waco did not sell such products to American Tobacco.

In response to plaintiff's claims, defendant argues that several of plaintiff's deposition statements foreclose plaintiff's ability to establish that he was exposed to asbestos products installed or supplied by Waco.  Specifically, defendant highlights the fact that plaintiff admits that he stayed out of the areas where outside contractors were working during the installation of asbestos pipe insulation, that plaintiff never personally installed or repaired asbestos insulation, and that he generally did not work directly around steam pipes that were covered with asbestos insulation.  The court, however, considering the entire record and resolving all factual issues in plaintiff's favor, disagrees with defendant's contention that such admissions wholly undermine plaintiff's reasonable basis of recovery.  Defendant's arguments do succeed in highlighting what appear to be weaknesses in plaintiff's case against Waco, that is, defendant has clearly shown that plaintiff <u>might not</u> recover against Waco.  However, defendant has far from carried its burden of establishing that plaintiff has no reasonable basis for recovery against Waco.  On the contrary, the record establishes that Waco installed asbestos pipe insulation during plant shutdowns that plaintiff, unlike many American Tobacco workers, was required to work.  Furthermore, the evidence suggests that Waco did not drape off or otherwise contain airborne asbestos during installation prior to the early 1980s.  Such fact, standing alone, meets the minimal standard of establishing plaintiff's reasonable basis for recovery against Waco.  However, such fact does not stand alone, but is coupled with plaintiff's potential exposure during installations occurring in the early 1980s[4] and exposure to asbestos from shaking pipes.

---

[4] As stated above, even after Waco began using containment curtains, there is no evidence establishing that Waco properly cleaned the area or tested the air quality prior to plaintiff or other plant workers being permitted back in the area.  As the expert testimony proffered by plaintiff suggests that asbestos particles stay airborne for an extended period of time and may descend at a rate of one foot per hour or slower, the facts viewed in a light most favorable to plaintiff suggest that plaintiff has a reasonable claim for relief against Waco for exposure during the early 1980s as well as in the late 1970s.

Asbestos exposure may have occurred from shaking steam pipes because such pipes, covered with asbestos insulation, would "shake and vibrate violently" causing dust to fall (Mo. to Remand Ex. C).  Although plaintiff admits that he did not generally work in close proximately to such pipes, plaintiff need not prove that he will ultimately succeed in establishing such exposure, but rather, need only show a possibility of a right to recover against Waco.  A reasonable possibility of recovery exists on these facts because plaintiff stated, under oath, that although he never installed or removed pipe insulation he had "incidental exposure" to such insulation in that the insulated pipes "would shake constantly" (Pl. Depo. 85-86).

Defendant further argues that plaintiff has failed to establish a reasonable basis for recovery because all of plaintiff's claims are based on speculation.  The court agrees with defendant that a plaintiff's theory of liability "cannot live on speculation alone."  Beaudoin v. Sites, 886 F. Supp. 1300, 1305 (E.D. Va. 1995).  However, here, plaintiff's grounds for relief do not exist on speculation alone.  It is not speculative that Waco installed asbestos pipe insulation at the American Tobacco plant from 1969 through at least the end of the 1970s without using curtains to seal off the area, an affidavit submitted by one of plaintiff's co-workers swears to such and plaintiff's deposition corroborates his co-worker's claim (Mo. to Remand Ex. C), (Pl. Depo. 47-48, 114).  Likewise, plaintiff's coworker's affidavit does not speculate about pipe vibrations causing dust, but rather expressly states: "Dust would fall from the asbestos-insulated steam pipes whenever [they were restarted after shut-downs] and [t]he pipes also vibrated during normal plant operations creating dust, especially when a machine had to be brought down for repairs and then was restarted too quickly" (Mo. to Remand Ex. C).  Although plaintiff may have speculated that dust fell when the asbestos covered steam pipes shook violently, such speculation is not in conflict with plaintiff's coworker's affidavit and, if anything, indicates plaintiff's

agreement with such claim.  Furthermore, although defendant is correct that <u>the exact</u> migration of airborne asbestos will likely remain speculative, expert testimony may nevertheless be admissible to establish the extended length of time that asbestos dust generally remains airborne. Such testimony may be sufficient to permit the finder of fact to conclude, by a preponderance of the evidence, that asbestos released from shaking pipes or asbestos installation and removal during shutdowns was airborne in buildings where plaintiff worked.  As a result, plaintiff's case is not grounded on speculation alone.

## IV.  Conclusion

The court therefore concludes that defendant has failed to carry the heavy burden necessary for establishing fraudulent joinder.  Although the court has carefully considered the record before it and the arguments of both parties, permitting extensive litigation or discovery regarding jurisdictional questions should be avoided as "a jurisdictional inquiry is not the appropriate stage of litigation to resolve these various uncertain questions of law and fact." <u>Hartley</u>, 187 F.3d at 425.  Rather, jurisdictional rules are in place to "direct judicial traffic" and "steer litigation to the proper forum with a minimum of preliminary fuss." <u>Id.</u>  The best way for the court to "direct traffic" and steer cases to the proper forum is to "accept the parties joined on the face of the complaint unless joinder is clearly improper." <u>Id.</u>  Here, joinder of Waco, a defendant that supplied and installed asbestos pipe insulation to the plant at which plaintiff was exposed to asbestos is not "clearly improper" and plaintiff's Complaint and exhibits have established a "reasonable basis" for recovery against Waco.[5]

---

[5] Because defendant has plainly failed to establish fraudulent joinder, the court declines to comment extensively on defendant's allegations that plaintiff never intended on recovering a judgment from Waco.  Notably, defendant asserts, without justification, that plaintiff's counsel "has named Waco in other lawsuits, and has frequently dismissed them a little over a year after

Accordingly, as defendant has failed to carry its heavy burden to establish fraudulent joinder, the court **GRANTS** the plaintiff's motion to remand and **ORDERS** this case remanded to the Circuit Court for the City of Newport News, Virginia.  The court's decision to rule on plaintiff's motion and remand this matter plainly expresses the court's **DENIAL** of Warren Pumps' motion to stay proceedings in this court.

The Clerk is **REQUESTED** to mail a certified copy of this order to the Clerk of the Circuit Court for the City of Newport News, Virginia, as well as copies to counsel of record for both parties and to the Judicial Panel on Multi-district Litigation.

It is so **ORDERED**.


_____/s/_____
Jerome B. Friedman
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
July ___31___, 2006

---

filing" and that "it is evident that Plaintiff has no real intention of obtaining a joint judgment against Waco" (Notice of Removal 6).  Such allegations are not only based on bald conjecture, but plaintiff has advanced evidence tending to disprove such claims (affidavit testimony submitted by plaintiff states that, over the last seven years, plaintiff's counsel named Waco as a defendant in over 600 cases, yet has only dismissed Waco in approximately 3% of such cases; notably, recovery from Waco was achieved in nearly 83% of such cases).  Although the court recognizes that the record has not been fully developed on this issue, defendant's request for leave to perform further discovery into plaintiff's past and present subjective intent is denied because plaintiff has a cognizable claim against Waco.  As a result, and as admitted by defendant, even if plaintiff did subjectively consider Waco's citizenship, such "motivation standing alone is not enough to establish fraudulent joinder." (Def. Reply to Mo. to Remand 12).